*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* UNDERWOOD, Minors.

UNPUBLISHED
August 21, 2025
1:39 PM

No. 371748
Monroe Circuit Court
Family Division
LC No. 23-028478-NA

Before: YOUNG, P.J., and LETICA and KOROBKIN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to NAU and NRU under MCL 712A.19b(3)(c)(*i*) (over 182 days have passed since the initial disposition and the conditions leading to the adjudication continue to exist without a reasonable likelihood that they will be rectified), (g) (parent is financially able to, but fails to provide proper care and custody and no reasonable expectation that they will be able to do so within a reasonable time considering the child's age), and (j) (reunification with parent presents reasonable likelihood of harm to the child). We affirm.

In May 2023, the 30-year-old respondent, who was seven months pregnant, was found living in the woods with two-year-old NAU. When brought to the hospital, respondent tested positive for cocaine and marijuana. Respondent confirmed that she was unemployed and homeless, but provided conflicting testimony about the length of time that she had been homeless and where she had been living. Respondent had a history of Child Protective Services (CPS) investigations dating back to 2012.

The Department of Health and Human Services (DHHS) moved to remove NAU from respondent's care. NAU was taken into protective custody and then made a temporary ward of the court.

NRU was born prematurely in June 2023. She was placed in the neonatal intensive care unit and was on oxygen support, antibiotics, and a feeding tube. NRU was monitored for signs of withdrawal after respondent admitted that she had used cocaine within hours of NRU's birth. A blood test from NRU's umbilical cord was positive for cocaine and several of its metabolites.

NRU was made a temporary ward of the court and placed in the same foster care home as NAU. After leaving the hospital, respondent replied sporadically to text messages from her caseworkers and it was unclear where she was living.

A case service plan was created for respondent in July 2023. It required respondent to: (1) keep DHHS informed of any changes to her phone number or address within 48 hours, (2) maintain contact with DHHS, (3) not violate any laws, (4) obtain and maintain suitable housing, (5) allow a home inspection on request, (6) obtain and maintain a legal source of income, (7) complete a psychological evaluation and follow any recommendations, (8) complete parenting education classes and follow recommendations, (9) participate in parenting time, (10) not allow unauthorized people to interact with the children, (11) participate in a substance-abuse assessment and treatment, and (12) participate in drug screens. An updated case service plan was prepared in September 2023, including essentially the same requirements.[1] This plan updated the contact e-mail for the new caseworker and added a requirement that respondent provide DHHS with a parent education certificate after she completed her parenting classes.

At the March 2024 permanency planning hearing, DHHS sought to change the plan from reunification to termination. The court authorized DHHS to file a termination petition, which it did.

The subsequent hearing testimony showed that respondent was largely noncompliant with her service plan. She failed to inform DHHS of her phone number and address changes in a timely manner and did not maintain contact with her caseworkers. Respondent was arrested and incarcerated twice. She reported living with a boyfriend in Carleton, Michigan, in a trailer owned by her boyfriend's sister. But, this home was never inspected and it was unclear exactly when respondent began living there. Respondent did not obtain a legal source of income. She refused to undergo a psychological evaluation. Likewise, respondent did not complete parenting classes or substance-abuse treatment. She participated in five drug screens, all of which were positive for cocaine with some also positive for methamphetamine. Respondent sporadically attended her parenting times, but stopped attending in October 2023. She once brought an unauthorized person to a parenting time, but told him to leave when reminded by her caseworker that she could not have unapproved people at her parenting time.

Respondent initially appeared at the termination of parental rights hearing, but then left. Respondent later explained that she departed after learning that her sister was in a car accident. In June 2024, the court reopened the proofs and allowed respondent to testify. Respondent was currently incarcerated.

Respondent now denied ever living in the woods with NAU. She testified that she was drug-free other than medication prescribed for depression and anxiety, but could not clearly identify her last use of illegal drugs or any lengthy period of sobriety. Respondent also asserted

---

[1] Although the front page of the September 2023 case service plan reflected a preparation date of June 1, 2023, it was signed by the new caseworker and the former caseworker, who was now a supervisor, on September 26, 2023.

that she promptly notified her caseworkers and service providers of any changes to her phone numbers or addresses and also called to schedule services, but did not receive calls back. Respondent had obtained housing, a trailer that she shared with her boyfriend and future sister-in-law, and claimed that it had been inspected by CPS. Respondent also performed odd jobs as her source of income, but was unaware that she needed to present proof to the caseworker. Respondent asserted that she attended all parenting time except four visits, but could not recall the last time that she saw her children. Respondent claimed that she could provide permanency and stability for her children.

The court resolved the conflict between respondent's and the caseworker's testimony in the caseworker's favor. The court concluded that respondent was "nearly entirely non-compliant with the case service plan." It further found that DHHS had made reasonable efforts "to preserve and unify the family[.]" And, as already discussed, the court found three statutory grounds to terminate respondent's parental rights and determined that termination was in the children's best interests. Respondent now appeals.

## I. DUE PROCESS

Respondent argues that she was deprived of due process because she was not provided with an updated case service plan. We disagree.

## A. PRESERVATION

To preserve an issue for appellate review, it must have been raised in the lower court. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent did not raise any issue with her case service plan in the lower court. Therefore, this issue is unpreserved. *Id*.

## B. STANDARD OF REVIEW

An unpreserved claim of constitutional error in a termination case is reviewed for plain error affecting substantial rights. *Id*. To establish plain error, respondent must show that an obvious error occurred which prejudiced the outcome of the proceedings. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020); *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Moreover, respondent must show the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings[.]" *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks and citation; first alteration in original).

## C. DISCUSSION

" 'Due process requires fundamental fairness . . . .' " *In re C Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 8, quoting *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993). "It is well-established that a tenet of due process is that [the] parties be given adequate notice of what they must do to avoid deprivation of fundamental rights." *Id*., citing *Dep't of State Compliance & Rules Div v Mich Ed Ass'n-NEA*, 251 Mich App 110, 116-117; 650 NW2d 120 (2002).

In a proceeding to terminate parental rights, there are two private interests: "(1) the parent's fundamental liberty interest in the care, custody, and management of the child and (2) the child's

interest in a normal family home." *In re Moss*, 301 Mich App 76, 86; 836 NW2d 182 (2013). Thus, DHHS has an affirmative duty to make reasonable efforts to reunify a child with their parent before the parent's rights to the child may be terminated. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86.

To this end, DHHS must "prepare a case service plan that shall be available to the court and all the parties to the proceeding." MCL 712A.18f(2). And, before entering a dispositional order, the court must consider the case service plan. MCL 712A.18f(4). "The court may order compliance with all or any part of the case service plan as the court considers necessary." *Id*. Furthermore, "the case service plan shall be updated and revised at 90-day intervals as required by the rules promulgated under . . . MCL 722.111 to 722.128." MCL 712A.18f(5). "Updated and revised case service plans shall be available to the court and all parties to the proceedings." *Id*.

In this matter, DHHS created a case service plan for respondent on July 11, 2023. Following the dispositional hearing, the court ordered respondent to "comply with, and benefit from, the case service plan" that it attached to the dispositional order.

An updated plan, which was materially the same, was submitted on September 26, 2023. After a review hearing on October 4, 2023, the court again ordered respondent to "comply with, and benefit from, the case service plan," attaching the updated plan.[2] And, although respondent's parental rights were not terminated until June 3, 2024, no other case service plans are contained in the lower court record.

While court reports for each review hearing were submitted by the caseworker assigned to respondent's case, they are not case service plans because they are "backwards-looking documents" and do not detail the services that will be provided to respondent. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 7. Nevertheless, we note that respondent did not attend the December 2023 review hearing or the March 2024 permanency planning hearing and the orders that entered following those hearings stated that she was to "comply with, and benefit from, the case service plan."

DHHS's failure to provide an updated case service plan every 90 days was a clear error because it did not comply with the requirements of MCL 712A.18f(5). *Utrera*, 281 Mich App at 9. But this failure did not prejudice respondent or affect the outcome of this case. *Ferranti*, 504 Mich at 29. DHHS provided services for respondent and made efforts to reunite her with her children. Respondent was aware of the requirements of the case service plan; however, she denied any need for assistance with her substance use or mental health, was essentially noncompliant with them, and expressed that they were too much for her. Consequently, respondent's right to due process was not violated because she had notice of what actions were necessary to prevent termination of her parental rights. *In re C Walters*, ___ Mich App at ___; slip op at 8. And, as

---

[2] The record contains a separate order entered on October 6, 2023, which also attached the September 2023 case service plan and directed respondent to comply with and benefit from it.

discussed in section II, despite DHHS offering significant services and making reasonable efforts toward reunification, respondent was noncompliant and failed to benefit from the services offered. *In re MJC*, ___ Mich App at ___; slip op at 8. Thus, respondent has not established that she would have successfully reunified with her children if the case service plan had been updated as mandated and she is not entitled to relief. *Id*.

## II. REASONABLE EFFORTS

Respondent also argues that the court erred in finding that petitioner had made reasonable efforts at reunification because it failed to update her case service plan. We disagree.

## A. PRESERVATION

To preserve an argument related to reasonable efforts at reunification, a respondent must object to the services when they are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). A parent must challenge the offered services when a service plan is adopted or soon after. *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). Even so, an objection may still be timely if raised later in the proceedings because child protective proceedings are viewed as one continuous proceeding. *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). Respondent never objected to the services offered to her, and therefore, the issue of whether DHHS made reasonable efforts is not preserved for appellate review.

## B. STANDARD OF REVIEW

See the standard of review in Section I. B. above.

## C. DISCUSSION

Absent aggravating circumstances, termination of parental rights is not appropriate unless reasonable efforts at reunification have been made. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). See also *In re Atchley*, 341 Mich App at 337; MCL 712A.19a(2). Again, DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Hicks/Brown*, 500 Mich at 85-86. Additionally, DHHS must update the case service plan in 90-day intervals. See MCL 712A.18f(5).

Although DHHS must provide services supporting reunification, a respondent is responsible for participating in and benefiting from the offered services. *In re Frey*, 297 Mich App at 248. Therefore, a respondent must establish that they would have fared better had different services been offered when challenging whether DHHS made reasonable efforts toward reunification. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

Review of this record reflects that DHHS made reasonable efforts to reunify respondent with her children. *Atchley*, 341 Mich App at 337; MCL 712A.19a(2). Petitioner created a case service plan that was individually tailored to respondent's needs. *Hicks/Brown*, 500 Mich at 85-86. The case service plan consisted of a psychological evaluation, parenting classes, parenting time with the children, a substance-abuse assessment, substance-abuse treatment, and drug screens. Respondent needed to maintain suitable housing, a legal source of income, and contact with her

caseworkers. She was to not violate any laws or allow unapproved people to have contact with the children.

Yet, respondent did not fully participate in and benefit from her case service plan. Respondent refused to undergo a psychological evaluation, did not attend parenting classes, stopped engaging in parenting times, did not undergo a substance-abuse assessment or successfully follow through on treatment. Notably, respondent repeatedly denied that she needed any substance-abuse treatment, despite NRU testing positive for cocaine at birth, respondent testing positive for cocaine and methamphetamine during her drug screens, and respondent admitting that she was drug addict.

DHHS also provided respondent with referrals for various services. DHHS supplied respondent with Uber gift cards and bus passes so that she could attend services. DHHS referred respondent to Orchard Children's Services, but that agency terminated her after she failed to communicate with it.

Respondent also continued to violate the law, resulting in her incarceration. Respondent did not have a legal source of income or any verified income or housing.

Respondent further failed to maintain contact with her caseworker. Such communication was critical to scheduling parenting time for respondent, who last visited the children in October 2023.

On appeal, respondent points to certain areas that she believes demonstrate that the caseworker failed her. For example, respondent contends that the caseworker thought that parenting classes were not offered in the jail and did not give respondent a number to call for parenting classes until the day before the October 2023 review hearing. Yet, the record reflects that the caseworker sent parent education materials to respondent when she was in jail, unaware that respondent was going to be released the following day. Furthermore, the caseworker arranged to keep respondent on the waitlist for parent education classes until she was released from jail at the end of September 2023.

Respondent also complains that the caseworker was unfamiliar with respondent's criminal matters, failed to get in contact with respondent's probation officer, and did not have an e-mail address for respondent. But the record shows that the caseworker was aware that respondent was incarcerated, even if she did not know all the details, that she repeatedly called respondent's probation officer without response, and that she followed up with respondent's attorney in order to obtain respondent's e-mail address. Regardless, the caseworker used alternate means to contact respondent, and, as the court found, respondent was noncompliant with the requirement that she maintain contact with the agency.

In sum, the record shows that DHHS made reasonable efforts to rectify respondent's barriers to reunification, but respondent failed to participate in and benefit from the services offered. Although DHHS committed a clear error in failing to continue to update respondent's case service plan, respondent failed to establish that she was prejudiced. Further, respondent failed to identify what alternative services could have been provided or how she would have fared better had they been offered. *In re Sanborn*, 337 Mich App at 264. Accordingly, the trial court did not

clearly err in determining that DHHS made reasonable efforts to assist respondent in addressing the barriers to reunification with her children before terminating her parental rights.

Affirmed.

/s/ Adrienne N. Young
/s/ Anica Letica
/s/ Daniel S. Korobkin